IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> PATRICK MERRILL BRODY and DAVID EUGENE ROSS, II, <br><br> Defendants. | ORDER and MEMORANDUM DECISION <br><br><br><br><br> Case No. 2:08-CR-410 CW |

      Defendants Patrick Merrill Brody and David Eugene Ross II have been charged with, among other things, four counts of money laundering.  Now before the court are Mr. Brody and Mr. Ross's motions to dismiss the money laundering counts against them as barred by the statute of limitations.  For the reasons discussed below, their motions are GRANTED.

## BACKGROUND

      In Counts IV-VI of the Indictment, the Defendants are charged under 18 U.S.C. § § 2 and 1956(a)(2)(A).  In those counts, the government alleges that Defendants engaged in money laundering transactions occurring on October 15, 2001 (Count IV), November 15, 2001 (Count V) and December 10, 2001 (Count VI).  Count VII is another money laundering charge against Defendants under 18 U.S.C. § § 2 and 1957.  The transaction alleged in Count VII occurred on December 14, 2001.

      On April 15, 2005, government investigators made an official request to Belize for

information regarding the Defendants' alleged activities in that country.  Belize provided some

documents on June 24, 2005 and in response, investigators requested supplemental documents on

December 13, 2005.  In September and November 2006, Belize provided additional documents.

On January 11, 2007, Belize sent a final group of documents as well as a certificate of

authenticity regarding all the records it had sent.

On May 17, 2007, the government made an *ex parte* application under 18 U.S.C. § 3292

to suspend the statute of limitations.  The court granted that application on May 21, 2007.  The

Indictment was returned against the Defendants on June 25, 2008.

In their present motions to dismiss, Defendants argue that Counts IV-VII are time-barred.

Specifically, under 18 U.S.C. § 3282, the statute of limitations for the alleged crimes is five

years.  Absent a suspension of the statute, then, the periods on each of Counts IV-VII had lapsed

by December 14, 2006 and the June 25, 2008 indictment would be untimely.  Defendants argue

that the government's application to suspend the limitation periods under § 3292 came too late in

this case.  That is, Defendants assert that an application under § 3292 must be made before the

relevant statute of limitations has expired.  If the application is brought after that time,

Defendants contend, a suspension of the running of the statute may not occur.  Here, the

government did not make its application under § 3292 until May 2007, about five months after

all of the unaltered limitations periods had expired.

The government does not dispute that the statute of limitations for each of Counts IV-VII

is five years.  But according to the government, those periods were suspended as of April 2005,

when investigators made their initial request to Belize.  Under the government's view of § 3292,

the statute of limitations is automatically suspended on the date on which investigators make

their request to a foreign government.  It is therefore unnecessary, maintains the government, for a § 3292 application to be made before the original statute of limitations has run.  According to the government, the only timing requirement for an application to suspend under § 3292 is that it come before the return of the indictment.  Consequently, it is the government's position that the statute of limitation periods on Counts IV-VII were suspended before they ran and the June 25, 2008 indictment was timely.

## ANALYSIS

In deciding a motion to dismiss an indictment, the indictment is tested "solely on the basis of the allegations made on its face, and such allegations are taken to be true."  United States v. Reitmeyer, 356 F.3d 1313, 1316-17 (quoting United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994).  "Statutes of limitations normally begin to run when the crime is complete."  Reitmeyer, 356 F.3d at 317 (citation omitted).

Here, neither side contests the dates of the alleged transactions set out in the Indictment.  Nor is there any dispute that the dates on which the alleged crimes were "complete" are the dates of the alleged transactions.  See 18 U.S.C. § § 1956 & 1957 (generally defining violations as undertaking certain "transactions").  Finally, the timing of the relevant filings in this case is not a contested issue.

Given the undisputed nature of these items, the crucial question here is one of statutory interpretation, i.e., how the court should read § 3292.  When interpreting a statute, a court first looks to the statute's text.  See United States v. Husted, 545 F.3d 1240, 1242 (10th Cir. 2008).  "If the words of the [relevant statute] are unambiguous, our inquiry progresses no further."  Id. at 1243.  "It is a cardinal principle of statutory construction that '[i]f the language is clear and

unambiguous, the plain meaning of the statute controls.'" Id. (quoting Vaughn v. Epworth Villa, 537 F.3d 1147, 1152 (10th Cir. 2008)).  Nonetheless, when a court considers statutory language, it should not do so in a "vacuum."  United States v. Hinckley, 550 F.3d 926, 934 (10th Cir. 2008).  "[I]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."  Id. at 934 (quoting United States Nat'l Bank of Or. v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993)).

"If the court finds the statute ambiguous, the court then looks beyond the plain text to resolve the ambiguity, examining legislative intent, overall statutory construction, and relevant subtitles."  Hinckley, 550 F.3d at 933 (citation omitted).  Moreover, a criminal statute of limitations must "be liberally interpreted in favor of repose."  Reitmeyer, 356 F.3d at 1317 (citation omitted).  Further, courts should "avoid an interpretation of a federal statute that engenders constitutional issues."  United States v. Ciapponi, 77 F.3d 1247, 1250 n.2 (10th Cir. 1996) (citation omitted).  When a court considers each of these factors and still perceives some ambiguity, it should apply the rule of lenity, which requires the court "to interpret a federal criminal statute in such a fashion as to avoid an increase in the penalty prescribed for the offense."  Hinckley, 550 F.3d at 933 n.4 (citation omitted).

With these principles in mind, the court turns to § 3292, which reads in full as follows:

(a)(1)  Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

4

(2)  The court shall rule upon such application not later than thirty days after the filing of the application.

(b)  Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.

(c)  The total of all periods of suspension under this section with respect to an offense--

(1)  shall not exceed three years; and

(2)  shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

(d)  As used in this section, the term "official request" means a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country.

18 U.S.C. § 3292.

The question now before the court is one of timing.  As mentioned, Defendants assert that § 3292 requires the government to make an application <u>before</u> the statute of limitations expires. For its part, the government argues that § 3292 allows an application to be made <u>after</u> the period ends, provided that (1) the initial request to foreign country was made before the period ended and (2) the application is made before the indictment is returned.

The Tenth Circuit has yet to reach this question.  Outside of this circuit, only a few courts have considered it, and they have reached differing conclusions.  The latest appellate court decision to directly rule on this issue comes from the Second Circuit, <u>United States v. Kozeny</u>, 541 F.3d 166 (2nd Cir. 2008).  In <u>Kozeny</u>, the court held that § 3292 requires the government to make an application to suspend before the statute of limitations runs.  <u>See</u> <u>id.</u> at 170-71.  <u>Kozeny</u> ruled that if such an application were not made before the statute expired, the court could not

retroactively suspend the statute of limitations back to the date of the request.  See id.

Accordingly, under Kozeny, if both an application under § 3292 and an indictment come after the

original statute of limitations has passed, the indictment would be untimely.  The request to the

foreign country does not itself suspend the running of the statute, but only sets the start date for

the period of suspension.

Kozeny began its analysis by rejecting the Ninth Circuit's decision in United States v.

Bischel, 61 F.3d 1429 (9th Cir. 1995) and a district court's decision United States v. Neill, 940 F.

Supp. 332 (D.D.C. 1996).  See Kozeny, 541 F.3d at 170-71.  Both of those cases concluded that

the only timing requirement for an application under § 3292 was that it be made before the return

of the indictment and that a court could retroactively suspend the running of a statute of

limitations even if the application was made after the original period had passed.  See id.  Kozeny

discounted those cases in part because they relied on United States v. Miller, 820 F.2d 1073,

1076 (9th Cir. 1987).  See id. at 173 n.7.  Kozeny viewed this reliance as erroneous because

Miller did not consider the precise question of whether an application for suspension could be

granted after the original statute of limitations passed.  See Kozeny, 541 F.3d at 173 n.7.

Kozeny then engaged in close reading of the text of § 3292.  In particular, the court

examined the words "suspend" and "running" and reasoned as follows:

> It seems to us unnecessary to canvas entries in general dictionaries, or specialized legal
> ones, or even to inquire into the case law surrounding the "Suspension Clause," to
> conclude that "to suspend" is to cause to stop, at least for a time, something that is
> otherwise in operation or effect.  And a statute of limitations is only in operation or effect
> if it is running.  It is equally obvious, we think, that a statute of limitations cannot be
> "running" if it has already "run," i.e., if it has expired at the end of the prescribed period.
> It follows that a district court can "suspend the running of [a] statute of limitations," 18
> U.S.C. § 3292(a)(1), only if the limitations period has not yet expired.  To restart the
> running of an expired statute of limitations would be to "revive" it.  We see no basis upon

which to read the word "suspend" in section 3292 to include the distinct concept of revival.

Kozeny, 541 F.3d at 172 (footnotes and citations omitted).

Kozeny also rejected the government's argument that under § 3292(b), the period of suspension automatically begins when the request is filed.  The court reasoned that the "fact that the statute requires a retroactive starting date for the suspension period does not speak to whether applications for a suspension must be filed before the statute of limitations has run."  Id. at 174.  Moreover, Kozeny saw no inconsistency in requiring the application be made before the original statute had run and starting the suspension period at the request date.  See id.  Because Kozeny believed that the language of § 3292 was unambiguous, it refused to consider legislative history, which the court characterized as "meager" in any event.  Id. at 174 n.9.

Kozeny next considered the "whole act" rule, which requires courts to look at the section in the context of the whole law and to its object and policy.  See id. at 174-75.  The court reasoned that § 3292 was meant to protect defendants from governmental delay before bringing the indictment, while the Speedy Trial Act prevents delay after.  See id. at 175.

Finally, Kozeny invoked the doctrine of constitutional avoidance.  That is, the court noted that there is a "non-frivolous" concern that reviving a statute of limitations might violate the Ex Post Facto Clause and Due Process Clause.  Id. at 176.  The court noted that while this consideration was not decisive, its interpretation avoided those concerns.  Id. at 175-176.

The view that an application under § 3292 need not be made before the original statute of limitations passes was set out by the Ninth Circuit in Bischel.  In Bischel, the court rejected the proposition that "a § 3292 order cannot revive or extend a period of limitations."  Bischel, 61

7

F.3d at 1434.  In looking at the text of § 3292, Bischel opined that " the statute plainly

contemplates that the starting point for tolling the limitations period is the official request for

evidence, not the date the § 3292 motion is made or granted."  Id.  Bischel then reasoned that the

Ex Post Facto Clause's prohibition on statutes allowing a revival of limitations periods was not a

concern because it was not § 3292 itself that "revive[d]" the statute of limitations, but a "judicial

application" of that statute.  Id.  Bischel further dismissed Due Process Clause concerns because

the court was unaware of any "right to a fixed period of limitations" and reasoned that in any

event, a suspension was limited to three years or six months, depending on the situation.  Id. at

1434-35.  Finally, Bischel rejected the argument that allowing the statute of limitations to be

revived would violate the Ex Post Facto Clause by taking away a defense, concluding that the

statute of limitations was not the type of defense protected by that clause.  Id. at 1435-36.

　　　　Recently, the Third Circuit sided with Bischel on this question.  See United States v.

Hoffecker, 530 F.3d 137 (3rd Cir. 2008), cert. denied, 129 S. Ct. 652 (2008).  In a long footnote

that the court acknowledged is dicta, two Third Circuit judges "point out that under section 3292

there is no express requirement that the application to suspend the statute of limitations must be

made before the statute has run."  Id. at 163 n.4.  The judges reasoned that because "the period of

suspension begins to run when the official request for evidence is made to a foreign country and

not when the suspension application is made. . . there is no reason why a case seemingly barred

by the statute of limitations cannot be revived by a section 3292 application made before the

Government has received all of the requested foreign evidence."  Id.

　　　　After a careful review of § 3292 and the above authorities, the court concludes that as a

matter of plain meaning, § 3292 requires that an application to suspend be made before the

original statute of limitations has expired.  The court sees this interpretation as the only way to make sense of and give effect to phrase that "[u]pon application. . . the district court .. . shall suspend the running of the statute of limitations."  The statute does not give authority to the court "to revive" the statute once it has run.  Had that been the intent, Congress could have clearly indicated it with words that would allow that interpretation.

Further, like the court in <u>Kozeny</u>, this court sees no inconsistency with requiring that the application be made <u>both</u> before the indictment has been returned <u>and</u> before the running of the statute.  Moreover, the court does not believe that § 3292(b) should be read as automatically suspending the statute of limitations when a request to a foreign government is made.  This outcome essentially gives government investigators the power to unilaterally suspend the period by making such a request.  Read as a whole, however, there is little doubt that § 3292 gives the <u>district court</u> the power to suspend the running of the statute of limitations.  Rather than § 3292(b) serving as a self-executing trigger, then, it is meant to define the starting and ending points for the court-ordered suspension period.  This reading is bolstered by the language of § 3292(b), which speaks of the "period of suspension."  If that subsection contained language such as "the official request shall suspend the running of the statute of limitations," the court would have a different view of this question.

The court believes that this reading gives a consistent meaning to each term in § 3292.  Further, the court agrees with <u>Kozeny</u> that requiring an application to be made before the running of the statute of limitations is consistent with the object and policy of § 3292.

While the court views § 3292 as unambiguous in its timing requirements, other courts have read the statute and come to a different conclusion.  To be thorough then, the court notes

that it would have reached the same result if had it found § 3292 to be ambiguous.  First, the parties here do not make any legislative intent arguments and the court accepts Kozeny's view that the legislative history is brief and nondispositive.

The court is also not convinced that repose is a serious consideration in interpreting this statute.  Neither proposed interpretation of § 3292 advanced here would allow the statute of limitations to be suspended for more than three years.  Even under the government's view, the request to the foreign country must be made before the original period ends, and the statute does not allow for suspensions to last more than three years.  See 18 U.S.C. § 3292(c)(1).  Accordingly, under either reading, there is no concern that the statute could run indefinitely and thus no reason to invoke the concept of repose.

The court also avoids engaging in a constitutional analysis by holding that § 3292 requires the application before the statute has run.  As Kozeny noted, there are some seemingly meritorious arguments that the Ex Post Facto Clause and Due Process Clause may be put at issue by the government's reading of the statute and the court is not entirely convinced by Bischel's reasoning on these points.  Finally, the rule of lenity seems to militate towards a reading that favors criminal defendants.  In sum, the court believes that it would have reached the same conclusions here even if it had found the statute to be ambiguous.[1]

## ORDER

For the reasons stated above the court ORDERS as follows:

---

[1]Defendants also argue that because the government made its application under § 3292 after all of the relevant information had arrived from Belize, the application was untimely.  While this argument appears to have merit, the court's ruling that a § 3292 application must be made before the statute runs makes it unnecessary to reach this issue.

Defendants' motions to dismiss Counts IV-VII in the indictment against them (Dkt. Nos. 36 & 62) are GRANTED.

As noted at the hearing on this matter, the court will consider motions to dismiss Counts I and II as time-barred.  These motions should be filed by April 24, 2009.

DATED this 10th day of April, 2009.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

11